UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOSEPH JAMES,                                              :

                 Petitioner,                           :                03 Civ. 7612 (AJP)

         -against-                                  :                **OPINION AND ORDER**

DALE ARTUS,                                              :

                 Respondent.                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Chief Magistrate Judge:**

         Pro se petitioner Joseph James seeks a writ of habeas corpus from his November 4, 1999 conviction for first degree attempted robbery, and sentence as a persistent felony offender to eighteen years to life imprisonment.  (Dkt. No. 2: Pet. ¶¶ 1-4.)  James' habeas petition, as amended, alleges that his constitutional rights were violated by:  (1) the loss of a surveillance videotape, and the destruction of a bag of clothing and 911 tape (Pet. ¶ 13, Point I); (2) the prosecutor's closing argument that the issue of James' guilt was an "easy issue" that the jury need not "get caught up in," and also that the jury could know they "did the right thing" by returning a guilty verdict (Pet. ¶ 13, Point II); and (3) his appellate counsel's failure to raise the issue of James' enhanced sentence as violating  federal law under <u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S. 466, 120 S. Ct. 2348 (2000).  (Dkt. No. 11: Am. Pet.)

         The parties consented to decision of James' petition by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No.10.)

For the reasons set forth below, James' petition is DENIED and a certificate of appealability is not issued.

## FACTS

### The Prosecution's Case at Trial

On the evening of June 7, 1998, Clayton Dixon, a store detective at the HMV music store at 1280 Lexington Avenue, was observing surveillance monitors in the store's security office. (Dkt. No. 9: Dixon: Trial Transcript ["Tr."] 115-16, 118, 149.) Through the monitors, Dixon observed a man in a blue suit who Dixon recognized as former HMV security employee, co-defendant Christopher Dowtin. (Dixon: Tr. 118-21, 173.) Dixon also observed through the monitors two men, identified at trial as Charles Harriet and defendant Joseph James, dressed in overalls, hats and sunglasses. (Dixon: Tr. 120-21, 123-24, 150.) Dixon observed James and Harriet take up positions near the store's employees-only area, where they were joined by a man in a blue suit like the one worn by Dowtin, but the man's face was not visible on the monitor. (Dixon: Tr. 123-25, 176-77.) When Dixon, through the monitors, saw the three men enter the locked employees-only area he called 911 and described what he was witnessing. (Dixon: Tr. 126-27, 152-53, 165-67, 182.)

In a hallway in the employees-only area, HMV employee Edwin Velez encountered a man wearing a tan carpenter suit, goggles, a hat, and a bandanna covering the lower part of his face. (Velez: Tr. 203, 206-08.) Velez identified the man at trial as James. (Velez: Tr. at 220-21.) James pointed a gun at Velez and ordered him into the manager/supervisor's office with HMV employees Annette Suarez and Anita Kolenovic. (Velez: Tr. 210-11, 219; Kolenovic: Tr. 252-53; Suarez: Tr. 287-88.) Kolenovic recognized the man with the gun (James) as someone she had seen

in the store about five minutes earlier. (Kolenovic: Tr. 233-35.) Harriet also entered the office. (Suarez: Tr. 288; Kolenovic: Tr. 254-55, 269.) The men ordered Velez, Suarez and Kolenovic to lie on the floor, and they tied them up. (Velez: Tr. 211-17; Suarez: Tr. 288-91, 296-97; Kolenovic: Tr. 255-57, 271-72.) James and Harriet made an unsuccessful attempt to enter the adjacent locked cash office (Velez: Tr. 217-18; Kolenovic: Tr. 258; Suarez: Tr. 291-92, 297) before triggering the alarm when they exited through a side door onto 87th Street (Dixon: Tr. 128-29; Velez: Tr. 218; Kolenovic: Tr. 261; Suarez: Tr. 292; Britt: Tr. 573; Hydell: Tr. 338-39; Robinson: Tr. 647.)[1] James Hydell, a doorman standing on 87th Street, saw three men – two of whom were wearing beige overalls – exit HMV and enter a white vehicle waiting outside the store. (Hydell: Tr. 338-41, 345.) The driver of the car, Jermaine Britt, and a passenger in the car, Robinson, testified that Dowtin and James, wearing a jumpsuit, got in the car at 87th Street. (Britt: Tr. 567-68, 571-74; Robinson: Tr. 643, 645-48.)

James, Dowtin, Harriett, Britt and Robinson drove west across the Central Park transverse (Britt: Tr. 575; Robinson: Tr. 648-49), to 86th Street and Broadway, where they were stopped and arrested by police. (Ricci: Tr. 470-72, 481-83; Donnellan: Tr. 499-502, 508, 514.) Dixon and Velez were brought to the scene and identified Dowtin and James. (Dixon: Tr. 130-32, 151, 152; Velez: Tr. 220-21, 232; Donnellan: Tr. 507-08.) Following the arrest, police officers recovered from the sidewalk along the transverse a pair of goggles, a bandanna, a hat, a black "durag," and gloves. (Costa: Tr. 366-68.) In addition, police recovered a loaded pistol, tan overalls,

---

[1] The events that took place between the point when James, Harriet and Dowtin entered the employees-only area until they exited the store were not witnessed by Dixon via the security monitors, nor were they recorded on the surveillance tape. (Tr. 13; Dixon: Tr. 153, 177.)

goggles, and other articles of clothing from the car. (Ricci: Tr. 473-75; Costa: Tr. 368-70.) The police also vouchered the tan overalls that James was wearing when he was arrested. (Costa: Tr. 376-80.) All of the recovered items were vouchered with a police property clerk according to standard police procedure. (Costa: Tr. 370-72.) Dixon, Velez, Kolenovic and Suarez identified the overalls at trial as having been worn by James and another of the robbers. (Dixon: Tr. 144-45, 163-64; Velez: Tr. 242-43; Kolenovic: Tr. 264, 266; Suarez: Tr. 293-94.) Dixon and Kolenovic also identified the cap as having been worn by James. (Dixon: Tr. 146-47, 152; Kolenovic: Tr. 266-67.)

Neither James nor Dowtin presented any defense case after the close of the prosecution's case. (Tr. 699-700, 702-07, 759.)

**The Missing Evidence**

Prior to the start of the trial, the prosecutor lost the surveillance videotape taken in the HMV store on the evening of the robbery. (Tr. 5-6, 757-58.) Before it was lost, James himself, witnesses Dixon, Suarez, Velez and Kolenovic, co-defendant Dowtin and his counsel, and the prosecutor had viewed the tape; James' counsel had not. (Tr. 5-9, 199, 320, 637, 721; Dixon: Tr. 155; Kolenovic: Tr. 273-74; Suarez: Tr. 306, 309-10; Velez: Tr. 234-35, 241, 248.) However, a photograph of James and Harriet was created from a single frame of the video prior to its loss (Tr. 15, 17, 24, 27, 435-37; Tineo: Tr. 459, 462; Dixon: Tr. 136), was admitted into evidence (Tr. 133, 139) and published to the jury by James' counsel (Dixon: Tr. 153-54). Velez, Kolenovic and Dixon

identified James in this photograph at trial. (Velez: Tr. 222, 236; Kolenovic: Tr. 262-63, 277; Dixon: Tr. 137.)[2/]

During trial, it was discovered that the police department had destroyed one of the four bags of clothing vouchered as evidence. (Tr. 88-91; Costa: Tr. 386-90, 424-25.) According to the voucher ticket, the bag contained the following items that had been recovered from the getaway vehicle: hats, sunglasses, plastic gloves, blue windbreaker pants and a black duffle bag. (Costa: Tr. 386-90, 758-59.) Officer Costa, who had vouchered the items, did not receive prior notification that the evidence would be destroyed. (Costa: Tr. 392.) A photograph of the destroyed vouchered items was admitted into evidence at trial. (Costa: Tr. 445-51.)

It also was discovered that the 911 tape of Dixon's call had been erased by the police according to standard police practice. (Tr. 82-84, 520, 539-40, 753-54, 758.) However, a transcript of the call had been preserved and was provided to James' counsel. (Tr. 84, 751, 753, 758.)

As a sanction for the loss of the surveillance video, which James' counsel had not viewed, James' counsel requested dismissal of the indictment, or in the alternative, preclusion of all witness testimony regarding the video's contents and suppression of all in-court identifications by witnesses who saw the video. (Tr. 8, 10, 13, 751-52.) Because the court found that the loss of the surveillance video was negligent (Tr. 327-28), and there was no evidence of "prosecutorial misconduct or deliberate destruction of evidence" (Tr. 754), the court refused James' request for a dismissal of the indictment, but precluded testimony about the videotape's contents (Tr. 13, 323-24, 637). The court held that if the witnesses could identify the defendants in court, they could do so,

---

[2/]     Suarez was not able to identify James at trial. (Suarez: Tr. 295.)

and suggested that the parties stipulate that the prosecution had a video which was lost, and also indicated he would consider a request for an adverse inference.  (Tr. 13-14, 20-21, 314, 324, 328-34, 520-24, 540-47, 637-40, 713-27, 729-33, 746.)  Most of the issues about the videotape concerned whether co-defendant Dowtin was identifiable in the videotape and, if so, for how long he appeared on it.  (See, e.g., Tr. 520-24, 637, 713-27, 729-33, 746-51.)  Indeed, the court stated:

> The video seems to me is the most important lost item and it has the most significance for Mr. Dowtin because that's the only one witness that places him in the store and that's through viewing him in the surveillance camera.  That's Mr. Dixon.  As to Mr. James, I believe there is overwhelming evidence as well as circumstantial evidence.

(Tr. 753-54.)

The prosecution and defense counsel agreed to a stipulation regarding the loss of the surveillance video, and the destruction of the bag of clothing and the 911 tape.  (Tr. 756-59.)  The stipulation stated in part that the prosecutor lost the videotape, that the bag of clothing and 911 tape had been destroyed by the police, and that the prosecution had a duty to preserve the lost evidence for trial. (Tr. 757-59.)[3/]

---

[3/]     The stipulation read in full:

> All counsel stipulate and agree to the following facts:  "That a video tape from which still photograph, People's Exhibit One was printed, was made of surveillance that occurred in the HMV record store at 1280 Lexington Avenue, New York County on June 7th of 1998.  This video tape was made by Clayton Dixon and did not show any of the events which took place in the back supervisor's office also known as Room 115 on June 7th of 1998.
>
> Two, that on or about June 7th, 1998, HMV security, Mr. Dixon, gave the video tape recording to Police Officer Costa, who turned it over to the prosecutor for preservation as evidence.  No copy was ever made and turned over to either defense
> (continued...)

Both defense counsel for James and Dawtin stressed the loss of the videotape and other evidence in their closings. (Tr. 761-64, 788-92, 797, 800, 802.)

The court instructed the jury during its charge that the law permits an adverse inference that, "had that evidence been preserved and produced at trial, it would not have supported or in some way would have contradicted the People's case." (Tr. 850.) The court stressed to the jury that it was free to draw such negative inference, but was not required to do so. (Tr. 850.) The court

---

3/     (...continued)
counsel.

Number three, defense counsel for both defendants requested to see the video tape made of the events made in HMV store June 7th, 1998. On or about September 14th, 1999, defense counsel for Christopher Dowtin met with the prosecutor in his office. When the prosecutor started the tape purported to show Mr. Dowtin in the HMV store, the prosecutor fast forwarded to the end of the tape, showing three men walking towards the employee area. Defense counsel did not observe Mr. Dowtin pulling sensor tags off merchandise.

Four, before trial, the prosecutor discovered that he had lost the tape. He had made every effort to locate it, but has been unable to do so. Accordingly, it is unavailable for the juror's viewing at trial.

Five, in accordance with standard police procedure, Mr. Dixon's call to 911 was recorded by the police department. The police are required to preserve a copy of that tape. The police department destroyed the original tape and only a transcript summary was preserved and turned over to the defense counsel.

Number six, certain property vouchered by Police Officer Costa under H359275, a Polo black baseball cap, one pair of black rim sunglasses, one pair of silver rim glasses, a blue denim hat, plastic gloves, blue windbreaker pants, and a black duffle bag had been destroyed by the police department and is unavailable for trial.

Number seven, the prosecutor has a duty to preserve evidence for trial."

(Tr. 757-59.)

also pointed out to the jury that they were free to assign whatever weight to the stipulated facts they felt appropriate (Tr. 842), up to and including disregarding the loss of the evidence altogether (Tr. 850-51).[4]

**Prosecution's Summation**

During his closing argument, the prosecutor stated:

---

[4]    The court's adverse inference charge stated in full:

> In this case, during the course of the trial, you learned that the surveillance tape made at HMV, the original 911 tape of Mr. Dixon's call to the police and certain property removed from the white car and vouchered under No. H359275 has either been lost or destroyed and it is therefore unavailable for trial. You will also recall that a Sprint or summary of the police call, of the 911 call and photos of the property were preserved and available to both sides for this trial. The law requires the prosecutor to preserve all such photos and property so they may be available to defense counsel at trial. Here, that is no longer possible. I am going to give you some guidance with respect to how to treat these lost or destroyed items. You should first decide if having the particular evidence available for your inspection at this trial would have been helpful in resolving an issue of fact in dispute. If you so find, the law permits you to infer that had that evidence been preserved and produced at trial, it would not have supported or in some way would have contradicted the People's case. The law does not require you to draw what is known as a negative inference, but as judges of the fact, you may do so. It is your decision exclusively as the judges of fact. I suggest you evaluate the significance of each type of lost evidence separately and its significance as to each defendant's case separately, and then you decide if you wish to draw a negative inference against the People. You may decide that the unavailability of a particular item at this trial would not help you to resolve the factual issues in dispute and you may treat its lost [sic] or destruction accordingly or you may decide that having those – having that evidence or property here would have helped you to resolve some issue in dispute and you may draw the negative inference. However, you are the sole judges of the facts and it is your decision alone how to treat the lost item. These are simply guidelines to aid you in your resolution of the facts in dispute.

(Tr. 849-51.)

> [J]oseph James is crushed by the weight of the evidence. And under those circumstances . . . this is more than proof beyond a reasonable doubt. This is an easy issue. I think that's one of the issues that you can put – you can just put aside. Look at the evidence.

(Tr. 826-27.) The prosecution also urged the jury not to "get caught up in [the] issue" of James' guilt. (Tr. 827.) James' counsel objected and moved for a mistrial, saying these comments were "inflammatory," "not a fair statement of the issues in the case" and "deprived [James] of a fair trial." (Tr. 835.) The judge held it was "fair argument." (Tr. 836-37.) The judge, however, several times instructed the jury that the summations of counsel are not evidence (Tr. 760, 842) and that the jury could disregard counsel's arguments and inferences if they so chose (Tr. 840). In its charge, the court told the jury that its verdict should be based solely on the evidence, of which closing arguments are not a part. (Tr. 839-40, 842.) Lastly, the court extensively instructed the jury regarding the applicable burden of proof, explaining that the People must meet this burden, and that such burden never shifts to a criminal defendant. (Tr. 842-43, 866-72.)

**<u>Verdict and Sentence</u>**

The jury found James guilty of first degree attempted robbery, and on November 4, 1999, the court sentenced James, as a persistent violent felony offender, to eighteen years to life imprisonment. <u>See</u> <u>People</u> v. <u>James</u>, 289 A.D.2d 3, 3, 734 N.Y.S.2d 16, 17 (1st Dep't 2001).

**<u>James' Direct Appeal</u>**

On appeal to the First Department, James asserted that: (1) the trial court should have dismissed James' indictment because the prosecution lost the surveillance videotape and destroyed

a 911 tape and a bag of clothing (Dkt. No. 8: Morgan Aff. Ex. A: James 1st Dep't Br. at 15-19), and (2) the prosecutor's closing statement deprived James of a fair trial (id. at 20-26).

On December 4, 2001, the First Department unanimously affirmed James' conviction. People v. James, 289 A.D.2d 3, 734 N.Y.S.2d 16 (1st Dep't 2001). The First Department held that the trial court had properly determined an adverse inference to be the appropriate sanction for the prosecution's loss of the surveillance videotape and the destruction of the bag of clothing and 911 tape. People v. James, 289 A.D.2d at 3, 734 N.Y.S.2d at 16. The First Department found "no indication of bad faith" regarding the spoliation of evidence, "no reason to believe that any of this evidence was exculpatory or helpful to" James, and concluded that the "stipulation concerning the results of co-defendant's counsel's viewing of the videotape prior to its loss . . . permitted defendant to take advantage of whatever value the tape may have had in impeaching a prosecution witness." Id.

Regarding James' claim that the prosecution's closing argument deprived him of a fair trial, the First Department held that the prosecutor had not sought to lessen the prosecution's burden of proof, but merely argued in summation that the People had overwhelmingly met their burden in proving James' guilt. Id. The First Department also held that the "court's curative instructions prevented any of the challenged remarks from causing any prejudice" to James; and that, "[i]n any event," if there were any error, the court "would find it to be harmless beyond a reasonable doubt in light of the overwhelming evidence of defendant's guilt." Id.

On March 27, 2002, the New York Court of Appeals denied leave to appeal. People v. James, 97 N.Y.2d 755, 742 N.Y.S.2d 616 (2002).

**James' C.P.L. § 440 Motion**

On July 10, 2002, James moved pro se to vacate his judgment and set aside his sentence pursuant to C.P.L. § 440. James argued that (1) dismissal of his indictment was required in light of a violation of his constitutional rights on the grounds of (a) "[d]uress, misrepresentation and fraud on the part of the prosecution," (b) "material evidence known by the prosecutor and court to be false before judgment," (c) "material evidence obtained contrary to constitutional provisions," (d) "improper and prejudicial conduct outside the record that would be reversible error if part of the record on appeal," and (e) "judgment was obtained in violation of defendant's constitutional rights"; and (2) his sentence should be set aside due to the court's failure to order a pre-sentence investigation report. (Dkt. No. 8: Morgan Aff. Ex. F: James C.P.L. § 440 Motion.)

On December 16, 2002, the trial judge denied James' C.P.L. § 440 motion. (Morgan Aff. Ex. H: 12/16/02 Judge Wittner Order.) James' § 440 claims going to his conviction were denied because the issues raised "were addressed on appeal, could have been raised on appeal or lack basis in fact." (Id.) James' § 440 sentencing argument was denied because it could have been raised at the time of sentencing, and did not allege "'a ground constituting legal basis for the motion.'" (Id.) The First Department denied leave to appeal from the denial of James' C.P.L. § 440 motion. (See Morgan Aff. Ex. I: 5/1/03 1st Dep't Order.)

**James' Current Federal Habeas Petition**

In September 2003, James timely filed his current federal habeas corpus petition alleging that his constitutional rights were violated by: (1) the loss of the surveillance videotape and the destruction of the bag of clothing and 911 tape (Dkt. No. 2: Pet. ¶ 13, Point I), and (2) the

prosecutor's closing argument that the issue of James' guilt was an "easy issue" that the jury need not "get caught up in," and also that the jury could know they "did the right thing" by returning a guilty verdict (Pet.¶ 13, Point II). In October 2004, James amended his petition to include the claim that appellate counsel was ineffective for failing to argue that James' sentence violated federal law under Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000). (Dkt. No. 11: Am. Pet.)

**James' Coram Nobis Application to the First Department**

Virtually simultaneously with amending his federal habeas petition, James filed a motion for a writ of error coram nobis in the First Department raising his ineffective assistance of appellate counsel claim. (Dkt. No. 11: Am. Pet. Ex.: James Coram Nobis Papers.) The First Department denied the motion on December 14, 2004. People v. James, 13 A.D.3d 1234, 787 N.Y.S.2d 674 (1st Dep't 2004). The New York Court of Appeals denied leave to appeal on April 14, 2005 (according to information the Court has received).

## ANALYSIS

### I.  THE AEDPA REVIEW STANDARD[5/]

---

[5/]  For additional decisions by this Judge discussing the AEDPA review standard in language substantially similar to that in this entire section of this Report & Recommendation, see, e.g., Boyd v. Smith, 03 Civ. 5401, 2004 WL 2915243 at *5-7 (S.D.N.Y. Dec. 17, 2004) (Peck, M.J.); Curry v. Burge, 03 Civ. 0901, 2004 WL 2601681 at *8 (S.D.N.Y. Nov. 17, 2004) (Peck, M.J.); Otero v. Eisenschmidt, 01 Civ. 2562, 2004 WL 2504382 at *16 (S.D.N.Y. Nov. 8, 2004) (Peck, M.J.); Kanani v. Phillips, 03 Civ. 2534, 2004 WL 2296128 at *10 (S.D.N.Y. Oct. 13, 2004) (Peck, M.J.); Medina v. McGinnis, 04 Civ. 2515, 2004 WL 2088578 at *7-9 (S.D.N.Y. Sept. 20, 2004) (Peck, M.J.); Smalls v. McGinnis, 04 Civ. 0301, 2004 WL 1774578 at *11-13 (S.D.N.Y. Aug. 10, 2004) (Peck, M.J.); Gillespie v. Miller, 04 Civ. 0295, 2004 WL 1689735 at *6-8 (July 29,2004) (Peck, M.J.); Castro v. Fisher, 04 Civ. 0346, 2004 WL 1637920 (S.D.N.Y. July 23, 2004) (Peck, M.J.), report & rec. adopted, 2004 WL 2525876 (S.D.N.Y. Nov. 8, 2004) (Cote, D.J.); Del Pilar v. Phillips, 03 Civ. 8636, 2004 WL 1627220 at *7-9 (S.D.N.Y. July 21, 2004) (Peck, M.J.); Peakes v. Spitzer, 04 Civ. 1342, 2004 WL 1366056 at *8-10 (S.D.N.Y. June 16, 2004) (Peck, M.J.), report & rec. adopted, 2004 WL 1656568 (S.D.N.Y. July 23, 2004) (Berman, D.J.); Brown v. Fischer, 03 Civ. 9818, 2004 WL 1171277 at *4-6 (S.D.N.Y. May 27, 2004) (Peck, M.J.); Rodriguez v. Goord, 02 Civ. 6318, 2004 WL 540531 at *10-13 (S.D.N.Y. Mar. 19, 2004) (Peck, M.J.); Rodriguez v. Senkowski, 03 Civ. 3314, 2004 WL 503451 at *22-24 (S.D.N.Y. Mar. 15, 2004) (Peck, M.J.); Hernandez v. Filion, 03 Civ. 6989, 2004 WL 286107 at *8-10 (S.D.N.Y. Feb. 13, 2004) (Peck, M.J.), report & rec. adopted, 2004 WL 555722 (S.D.N.Y. Mar. 19, 2004) (Berman, D.J.); Gomez v. Duncan, 02 Civ. 0846, 2004 WL 119360 at *14-16 (S.D.N.Y. Jan. 27, 2004) (Peck, M.J.); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *12-14 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my earlier cases); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *14 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002) (Scheindlin, D.J.), aff'd, No. 02-2540, 368 F.3d 179 (table), 2004 WL 1094269 (2d Cir. May 18, 2004); Mendez v. Artuz, 98 Civ. 2652, 2000 WL 722613 at *22 (S.D.N.Y. June 6, 2000) (Peck, M.J.), report & rec. adopted, 2000 WL 1154320 (S.D.N.Y. Aug. 14, 2000) (McKenna, D.J.), aff'd, 303 F.3d 411, 417 (2d Cir. 2002), cert. denied, 537 U.S. 1245, 123 S. Ct. 1353 (2003); Fluellen v. Walker, 97 Civ. 3189, 2000 WL 684275 at *10 (S.D.N.Y. May 25, 2000) (Peck, M.J.), aff'd, No. 01-2474, 41 Fed. Appx. 497, 2002 WL 1448474 (2d Cir. June 28, 2002), cert. denied, 538 U.S. 978, 123 S. Ct. 1787 (2003).

Before the Court can determine whether James is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners."  Williams v. Taylor, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000).  The AEDPA imposed a more stringent review standard, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[6]

---

[6]     See also, e.g., Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir. 2003), cert. denied, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing]' the power of federal courts to grant the habeas petitions of state prisoners.'") (quoting Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1611 (2002)); Christie v. Hollins, 01 Civ. 11605, 2003 WL 22299216 at *2 (S.D.N.Y. Oct. 7, 2003) (Mukasey, D.J.) ("As Magistrate Judge Peck explained, the 'unreasonable application' clause, and AEDPA more generally, imposes a heavy burden on habeas petitioners.").

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[7/] Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[8/] "That federal law, as defined by the Supreme Court, may either be a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d at 42. "A petitioner cannot win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." Yung v. Walker, 296 F.3d at 135; accord, e.g., DelValle v. Armstrong, 306 F.3d at 1200.

As to the "contrary to" clause:

A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . . A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court

---

[7/] Accord, e.g., Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003), cert. denied, 124 S. Ct. 962 (2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113, 125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[8/] Accord, e.g., Yarborough v. Alvarado, 124 S. Ct. 2140, 2147 (U.S. 2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); Wiggins v. Smith, 539 U.S. 510, 123 S. Ct. 2527, 2534 (2003); Lockyer v. Andrade, 538 U.S. 63, 72, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); Tueros v. Greiner, 343 F.3d 587, 591 (2d Cir. 2003), cert. denied, 124 S. Ct. 2171 (2004); Parsad v. Greiner, 337 F.3d at 181; DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002); Yung v. Walker, 296 F.3d 129, 135 (2d Cir. 2002); Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

Williams v. Taylor, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[9]

In Williams, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. at 413, 120 S. Ct. at 1523.[10] However, "[t]he term 'unreasonable' is . . . difficult to define." Williams v. Taylor, 529 U.S. at 410, 120 S. Ct. at 1522. The Supreme Court made clear that "an unreasonable application of federal law is different from an incorrect application of federal law." Id.[11] Rather, the issue is "whether the state court's

---

[9]   Accord, e.g., Brown v. Payton, 125 S. Ct. 1432, 1438 (2005); Bell v. Cone, 125 S. Ct. 847, 851 (2005); Price v. Vincent, 538 U.S. 634, 123 S. Ct. 1848, 1853 (2003); Lockyer v. Andrade, 123 S. Ct. at 1173-74; Rosa v. McCray, 396 F.3d 210, 219 (2d Cir. 2005); Tueros v. Greiner, 343 F.3d at 591; DelValle v. Armstrong, 306 F.3d at 1200; Yung v. Walker, 296 F.3d at 135; Kennaugh v. Miller, 289 F.3d at 42; Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 127-28.

[10]   Accord, e.g., Brown v. Payton, 125 S. Ct. 1439; Wiggins v. Smith, 123 S. Ct. at 2534-35; Parsad v. Greiner, 337 F.3d at 181.

[11]   See also, e.g., Yarborough v. Alvarado, 124 S. Ct. at 2150; Wiggins v. Smith, 123 S. Ct. at 2535; Price v. Vincent, 123 S. Ct. at 1853 ("As we have explained, 'a federal habeas court may not issue the writ simply because that court concludes that the state-court decision applied [a Supreme Court case] incorrectly.'") (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002)); Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 124-25; DelValle v. Armstrong, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was not an unreasonable application of, or contrary to, clearly established federal law as defined by Section 2254(d), we may not grant habeas relief even if in our judgment its application was erroneous.").

application of clearly established federal law was objectively unreasonable."  Williams v. Taylor,
529 U.S. at 409, 120 S. Ct. at 1521.[12/]  "Objectively unreasonable" is different from "clear error."
Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper
deference to state courts by conflating error (even clear error) with unreasonableness.").  However,
the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is
required . . . the increment need not be great; otherwise, habeas relief would be limited to state court
decisions so far off the mark as to suggest judicial incompetence.'"  Jones v. Stinson, 229 F.3d at 119
(quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).[13/]  "[T]he range of reasonable
judgment can depend in part on the nature of the relevant rule."  Yarborough v. Alvarado, 124 S. Ct.
at 2149.[14/]

---

[12/]    Accord, e.g., Yarborough v. Alvarado, 124 S. Ct. at 2150; Wiggins v. Smith, 123 S. Ct. at
2535; Price v. Vincent, 123 S. Ct. at 1853; Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct.
at 1174-75; Woodford v. Visciotti, 537 U.S. at 25-27, 123 S. Ct. at 360-61; Cox v. Donnelly,
387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d 231, 245 (2d
Cir. 2002); Yung v. Walker, 296 F.3d at 135; Loliscio v. Goord, 263 F.3d at 184; Lurie v.
Wittner, 228 F.3d at 128-29.

[13/]    Accord, e.g., Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01;
Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Yung v. Walker, 296
F.3d at 135; Loliscio v. Goord, 263 F.3d at 184; Christie v. Hollins, 2003 WL 22299216 at
*3.

[14/]    The Supreme Court explained:

[T]he range of reasonable judgment can depend in part on the nature of the relevant
rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule
may be plainly correct or incorrect.  Other rules are more general, and their meaning
must emerge in application over the course of time.  Applying a general standard to
a specific case can demand a substantial element of judgment.  As a result, evaluating
whether a rule application was unreasonable requires considering the rule's
(continued...)

Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." Kennaugh v. Miller, 289 F.3d at 45.[15/]

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference." Yung v. Walker, 296 F.3d at 134; accord, e.g., Bell v. Cone, 125 S. Ct. at 853.

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

---

[14/] (...continued)
        specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.

Yarborough v. Alvarado, 124 S. Ct. at 2149.

[15/] Accord, e.g., Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 296 F.3d at 135; see Yarborough v. Alvarado, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision. There is force to this argument. Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law. At the same time, the difference between applying a rule and extending it is not always clear. Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.") (citations omitted).

Sellan v. Kuhlman, 261 F.3d at 312; accord, e.g., Bell v. Cone, 125 S. Ct. at 853 ("Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them."); Rosa v. McCray, 396 F.3d 220; Wade v. Herbert, 391 F.3d 135, 140 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'" "Such a summary determination, even absent citation of federal case law, is a determination 'on the merits' and as such requires the deference specified by § 2254." Moreover, "[i]f any reasonable ground was available [for the state court's decision], we must assume that the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies.), cert. denied, 125 S. Ct. 110 (2004); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate Division disposition – the word 'denied' – triggered AEDPA deference.").[16/] "By its terms, § 2254(d) requires such deference only with respect to a state-court

---

[16/]    Accord, e.g., Cox v. Donnelly, 387 F.3d at 197 ("Neither the Appellate Division nor the New York Court of Appeals addressed [petitioner's] argument beyond a brief statement that the argument was without merit. In the absence of any expressed reasoning behind this conclusion, we turn directly to the facts of the case to determine whether Strickland was applied unreasonably."); Dallio v. Spitzer, 343 F.3d at 559-60; Parsad v. Greiner, 337 F.3d at 180-81; Cotto v. Herbert, 331 F.3d 217, 230 (2d Cir. 2003); Eze v. Senkowski, 321 F.3d at 121; Ryan v. Miller, 303 F.3d at 245; Aeid v. Bennett, 296 F.3d 58, 62 (2d Cir.), cert. denied, 537 U.S. 1093, 123 S. Ct. 694 (2002); Norde v. Keane, 294 F.3d 401, 410 (2d Cir. 2002); Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001).

(continued...)

'adjudication on the merits,' not to a disposition 'on a procedural, or other, ground.'  Where it is 'impossible to discern the Appellate Division's conclusion on [the relevant] issue,' a federal court should not give AEDPA deference to the state appellate court's ruling."  <u>Miranda</u> v. <u>Bennett</u>, 322 F.3d 171, 177-78 (2d Cir. 2003) (citations omitted).<u>17/</u>  Of course, "[i]f there is no [state court] adjudication on the merits, then the pre-AEDPA, <u>de novo</u> standard of review applies."  <u>Cotto</u> v. <u>Herbert</u>, 331 F.3d at 230.

---

<u>16/</u>   (...continued)
The Second Circuit "recognize[d] that a state court's explanation of the reasoning underlying its decision would ease our burden in applying the 'unreasonable application' or 'contrary to' tests."  <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d at 312.  Where the state court does not explain its reasoning, the Second Circuit articulated the analytic steps to be followed by a federal habeas court:

> We adopt the Fifth Circuit's succinct articulation of the analytic steps that a federal habeas court should follow in determining whether a federal claim has been adjudicated "on the merits" by a state court.  As the Fifth Circuit has explained, "[W]e determine whether a state court's disposition of a petitioner's claim is on the merits by considering: (1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits."  <u>Mercadel</u> v. <u>Cain</u>, 179 F.3d 271, 274 (5th Cir. 1999).

<u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d at 314; <u>accord</u>, <u>e.g.</u>, <u>Cotto</u> v. <u>Herbert</u>, 331 F.3d at 230; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 121-22; <u>Norde</u> v. <u>Keane</u>, 294 F.3d at 410; <u>Aparicio</u> v. <u>Artuz</u>, 269 F.3d at 93; <u>see also</u> <u>Dallio</u> v. <u>Spitzer</u>, 343 F.3d at 560.

<u>17/</u>   The Second Circuit in <u>Miranda</u> v. <u>Bennett</u> continued:  "Generally, when the Appellate Division opinion states that a group of contentions is either without merit 'or' procedurally barred, the decision does not disclose which claim in the group has been rejected on which ground.  If the record makes it clear, however, that a given claim had been properly preserved for appellate review, we will conclude that it fell into the 'without merit' part of the disjunct even if it was not expressly discussed by the Appellate Division."  <u>Id</u>. at 178.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); accord, e.g., Rosa v. McCray, 396 F.3d at 220. "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" Parsad v. Greiner, 337 F.3d at 181 (quoting § 2254(e)(1)).

James' claims were denied on the merits (see page 10 above) and so AEDPA deference applies.

## II. JAMES' CLAIM THAT THE LOSS OF THE SURVEILLANCE VIDEO AND THE DESTRUCTION OF THE 911 TAPE AND BAG OF CLOTHING VIOLATED HIS CONSTITUTIONAL RIGHTS IS WITHOUT MERIT

James claims in his habeas petition, as he did on appeal before the First Department, that the prosecution's loss of the videotape and destruction of the bag of clothing and 911 tape should have resulted in dismissal of the indictment pursuant to Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963). (Dkt. No. 2: Pet. ¶ 13, Point I; Dkt. No. 8: Morgan Aff. Ex. A: James 1st Dep't Br. at 15-19.)

A. **The Brady v. Maryland Standard**[18/]

Under <u>Brady</u> v. <u>Maryland</u> and its progeny, state as well as federal prosecutors must turn over exculpatory and impeachment evidence, whether or not requested by the defense, where the evidence is material either to guilt or to punishment. <u>See</u>, <u>e.g.</u>, <u>Strickler</u> v. <u>Greene</u>, 527 U.S. 263, 280, 119 S. Ct. 1936, 1948 (1999); <u>United States</u> v. <u>Bagley</u>, 473 U.S. 667, 676, 682, 105 S. Ct. 3375, 3380, 3383-84 (1985); <u>United States</u> v. <u>Agurs</u>, 427 U.S. 97, 107, 96 S. Ct. 2392, 2399 (1976); <u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963).[19/] The <u>Brady</u> rule also encompasses evidence known only to the police: "In order to comply with <u>Brady</u>, therefore, 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police.'" <u>Strickler</u> v. <u>Greene</u>, 527 U.S. at 281, 119 S. Ct. at 1948 (quoting <u>Kyles</u> v. <u>Whitley</u>, 514 U.S. 419, 437, 115 S. Ct. 1555, 1567 (1995)).

The <u>Brady</u> rule does not require a prosecutor to "deliver his entire file to defense counsel," but only to disclose those items which are material to the defendant's guilt or punishment.

---

[18/] For additional decisions authored by this Judge discussing the <u>Brady</u> v. <u>Maryland</u> standard in language substantially similar to that in this entire section of this Opinion, <u>see</u> <u>Skinner</u> v. <u>Duncan</u>, 01 Civ. 6656, 2003 WL 21386032 at *17 (S.D.N.Y. June 17, 2003) (Peck, M.J.); <u>Mendez</u> v. <u>Artuz</u>, 98 Civ. 2652, 2000 WL 722613 at *11-12 (S.D.N.Y. June 6, 2000) (Peck, M.J.), <u>report & rec. adopted</u>, 2000 WL 1154320 (S.D.N.Y. Aug. 14, 2000) (McKenna, D.J.), <u>aff'd</u>, 303 F.3d 411 (2d Cir. 2002), <u>cert. denied</u>, 123 S. Ct. 1353 (2003); <u>Franza</u> v. <u>Stinson</u>, 58 F. Supp. 2d 124, 153 (S.D.N.Y. 1999) (Kaplan, D.J. & Peck, M.J.).

[19/] <u>See also</u>, <u>e.g.</u>, <u>United States</u> v. <u>Jackson</u>, 345 F.3d 59, 70 (2d Cir. 2003), <u>cert. denied</u>, 541 U.S. 956, 124 S. Ct. 1705 (2004); <u>Shabazz</u> v. <u>Artuz</u>, 336 F.3d 154, 161-62 (2d Cir. 2003); <u>United States</u> v. <u>Gil</u>, 297 F.3d 93, 101, 103 (2d Cir. 2002); <u>In re United States</u> v. <u>Coppa</u>, 267 F.3d 132, 135, 139 (2d Cir. 2001); <u>United States</u> v. <u>Diaz</u>, 176 F.3d 52, 108 (2d Cir.), <u>cert. denied</u>, 120 S. Ct. 181 (1999); <u>Tankleff</u> v. <u>Senkowski</u>, 135 F.3d 235, 250 (2d Cir. 1998); <u>Orena</u> v. <u>United States</u>, 956 F. Supp. 1071, 1090-92 (E.D.N.Y. 1997) (Weinstein, D.J.).

United States v. Bagley, 473 U.S. at 675, 105 S. Ct. at 3380; accord, e.g., Kyles v. Whitley, 514 U.S. at 437, 115 S. Ct. at 1567 ("We have never held that the Constitution demands on open file policy."); United States v. Agurs, 427 U.S. at 108-09, 96 S. Ct. at 2400.[20]

"There are three components of a true Brady violation: [1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." Strickler v. Greene, 527 U.S. at 281-82, 119 S. Ct. at 1948.[21]

---

[20] See also, e.g., In re United States v. Coppa, 267 F.3d at 135; Tate v. Wood, 963 F.2d 20, 25 (2d Cir. 1992); United States v. Gaggi, 811 F.2d 47, 59 (2d Cir.), cert. denied, 482 U.S. 929, 107 S. Ct. 3214 (1987); Hoover v. Leonardo, No. 91-CV-1211, 1996 WL 1088204 at *2 (E.D.N.Y. June 11, 1996).

[21] See also, e.g., Banks v. Dretke, 540 U.S. 668, 691, 124 S. Ct. 1250, 1272 (2004); Moore v. Illinois, 408 U.S. 786, 794-95 , 92 S. Ct. 2562, 2568 (1972); United States v. Rivas, 377 F.3d 195, 199 (2d Cir. 2004); United States v. Jackson, 345 F.3d at 71; United States v. Gil, 297 F.3d at 101; In re United States v. Coppa, 267 F.3d at 140; United States v. Payne, 63 F.3d 1200, 1208 (2d Cir. 1995), cert. denied, 516 U.S. 1165, 116 S. Ct. 1056 (1996); Orena v. United States, 956 F. Supp. at 1090.

In Arizona v. Youngblood, 488 U.S. 51, 109 S. Ct. 333 (1988), the Supreme Court dealt with the loss or destruction of evidence which, had it been preserved, could have been subjected to further tests by the defense. In that case, the prosecution disclosed police reports and its expert's report in a sexual abuse case, but the material was not preserved sufficiently for the defense to conduct its own tests. In that circumstance, the Supreme Court found no Brady violation and held that due process was not violated absent bad faith by the police:

> The Due Process Clause of the Fourteenth Amendment, as interpreted in Brady, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. . . . We therefore hold that unless a criminal defendant can show bad faith on the part of
> (continued...)

**B.  Application of the Brady Standard to James' Claim**

James argues that his constitutional rights were violated by the prosecution's loss of the surveillance video taken in the store on the night of the robbery.  (Dkt. No. 2: Pet. ¶ 13, Point I; Dkt. No. 8: Morgan Aff. Ex. A: James 1st Dep't Br. at 15-18.)  James recognizes, as did the state courts, that of the three lost/destroyed pieces of evidence, the videotape was the most important.  (See page 6 above; see also James 1st Dep't Br. at 17.)  Because the videotape was not available at trial, even though the result of inadvertence, James meets the suppression prong of the Brady test.  However, James fails to show the exculpatory or impeachment value of the videotape (i.e., its materiality) or prejudice.  First, prior to its loss, the videotape was viewed by witnesses Dixon, Kolenovic and Velez, as well as the prosecutor and co-defendant Dowtin and Dowtin's counsel.  (See page 4 above.)  A still photo was extracted from the videotape clearly showing James in the store

---

[21/]  (...continued)
> the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

Arizona v. Youngblood, 488 U.S. at 57-58, 109 S. Ct. at 337.

It is undisputed that the trial judge and the First Department here found the loss of the videotape and the destruction of the 911 tape and bag of clothes to have been negligent and not the result of "prosecutorial misconduct or deliberate destruction of evidence."  (See pages 5, 10 above.)  The State argues that because there was no bad faith here, there was no Brady or due process violation under Arizona v. Youngblood.  (Dkt. No. 7: State Br. at 21-22.)  This Court disagrees.  Even inadvertent suppression can suffice, as Strickler made clear some ten years after Youngblood.  See Strickler v. Greene, 527 U.S. at 282, 119 S. Ct. at 1948 ("evidence must have been suppressed by the State, either willfully or inadvertently"); see also, e.g., Shabazz v. Artuz, 336 F.3d 154, 161 (2d Cir. 2003).  Nevertheless, since the destruction here was not willful and, as discussed above, James has not shown that the 911 tape was material nor how its absence (since he had the sprint report) was prejudicial, James' claim fails whether under Youngblood or Brady itself.

on the night of the robbery, wearing clothing similar to the clothing the witnesses described as worn by the robber.  (See pages 4-5 above.)  Thus, the videotape itself, like the still photo, would have shown James as having been in the store dressed like one of the robbers.  James also was identified in court by several witnesses based both on this photo and eyewitness observations during the robbery.  (See pages 4-5 above.)  In addition, two men that were in the getaway car with James testified that James drove with them to and from HMV, and that James was wearing attire similar to that of the robber.  (See page 3 above.)  The arresting officers similarly described James' clothing.  (See page 4 above.)  Given these facts, there can be little doubt that James was in the store on the evening of the robbery, and that the inadvertent loss of the videotape did not prejudice James. United States v. Jackson, 345 F.3d 59, 74 (2d Cir. 2003) ("'[A] new trial is generally not required when the testimony of the witness is 'corroborated by other testimony' or when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable.'"), cert. denied, 541 U.S. 956, 124 S. Ct. 1705 (2004); United States v. Gil, 297 F.3d 93, 103 (2d Cir. 2002) ("Where the evidence against the defendant is ample or overwhelming, the withheld Brady material is less likely to be material than if the evidence of guilt is thin."); Leka v. Portuondo, 257 F.3d 89, 104 (2d Cir. 2001) ("Materiality is assessed in light of the evidence adduced against the defendant at trial; when a conviction is supported by overwhelming evidence of guilt, habeas relief is not warranted.").

Indeed, James does not argue that the videotape would have shown that he was not in the store; rather, he argues that the videotape would have undercut security guard Dixon's testimony because the video would have shown Dowtin's conduct to be different than Dixon

described it. (James 1st Dep't Br. at 17.) Even if Dixon's testimony as to Dowtin were discredited, the absence of the videotape was not prejudicial to James (as opposed to Dowtin): in addition to Dixon, two other HMV employees identified James and described his role in the robbery (see pages 4-5 above), and James' presence at the robbery scene was corroborated by the testimony of two occupants of the getaway car (see page 3 above). Even if Dixon had been impeached as to co-defendant Dowtin, it would not have materially aided James' defense under these circumstances. Simply put, James cannot "show a 'reasonable probability of a different result'" if the videotape had not been lost. Banks v. Dretke, 540 U.S. at 699, 124 S. Ct. at 1276 ("Kyles instructed that the materiality standard for Brady claims is met when 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'") (quoting Kyles v. Whitley, 514 U.S. at 434-35, 115 S. Ct. at 1566).

Moreover, the trial judge imposed appropriate sanctions for the loss of the videotape. The court precluded testimony regarding the videotape's contents (see page 5 above), and encouraged counsel to stipulate about the lost evidence (see pages 5-6 above). James had the opportunity to exploit the videotape's unavailability at trial, in opening and closing statements and on cross-examinations. (See page 7 above.) Importantly, the court's sanction also included an adverse inference to the jury in its charge, which stated that the jury was free to find that the missing evidence, including the video, would have undermined the State's case against James. (See pages 6-8 above.) The sanctions ordered by the trial court served to remedy any harm to James from the videotape's loss. In light of the strong case against James based on available evidence and witness testimony, and the remedial steps taken by the trial court including the adverse inference instruction,

James has failed to prove that he was prejudiced by the missing videotape, and this most important aspect of his <u>Brady</u> claim must fail. <u>See</u>, <u>e.g.</u>, <u>People</u> v. <u>Smith</u>, 289 A.D.2d 1056, 1057, 735 N.Y.S.2d 693, 696 (4th Dep't 2001) ("'[T]he choice of 'appropriate' action is committed to the sound discretion of the trial court.' Here, the adverse inference charge given by the court alleviated any prejudice to defendant" from the prosecutor's failure to preserve <u>Brady</u> material.) (citations omitted), <u>appeal denied</u>, 98 N.Y.2d 641, 744 N.Y.S.2d 770 (2002); <u>People</u> v. <u>Jackson</u>, 264 A.D.2d 683, 684, 695 N.Y.S.2d 357, 358 (1st Dep't 1999) ("[A]ny prejudice to defendant resulting from the delay [in disclosing the exculpatory statements pursuant to <u>Brady</u>] was prevented by the court's curative actions, including . . . an appropriate adverse inference instruction."), <u>appeal denied</u>, 94 N.Y.2d 881, 705 N.Y.S.2d 13 (2000); <u>People</u> v. <u>Dickson</u>, 260 A.D.2d 931, 933, 690 N.Y.S.2d 282, 285 (3d Dep't) (adverse inference charge sua sponte given by the trial court to remedy the loss of <u>Brady</u> evidence was an appropriate exercise of its sound discretion), <u>appeal denied</u>, 93 N.Y.2d 1017, 697 N.Y.S.2d 576 (1999); <u>People</u> v. <u>Edwards</u>, 232 A.D.2d 342, 343, 649 N.Y.S.2d 408, 409 (1st Dep't 1996) ("The court's exercise of discretion in providing an adverse inference instruction as a sanction for the lost pages in the officer's memo book was appropriate and adequate."), <u>appeal denied</u>, 89 N.Y.2d 984, 656 N.Y.S.2d 743 (1997), <u>cert. denied</u>, 522 U.S. 1121, 118 S. Ct. 1064 (1998); <u>see</u> <u>also</u> <u>People</u> v. <u>Kelly</u>, 62 N.Y.2d 516, 522, 478 N.Y.S.2d 834, 837 (1984) ("Although the choice of 'appropriate' action is committed to the sound discretion of the trial court, as a general matter the drastic remedy of dismissal should not be invoked where less severe measures can rectify the harm done by the loss of the evidence.").

James' Brady claim as to the destroyed vouchered bag of clothing and 911 tape can be dealt with quickly. James' counsel conceded that "[p]erhaps neither the destruction of the bag of property nor the 911 [tape] alone would have justified dismissal of the indictment, [h]owever, the loss of these two pieces of evidence, along with the video, exacerbated the prejudice to [James] and required dismissal of the indictment." (James 1st Dep't Br. at 18-19, citation & fn. omitted.) James has not shown how this information was material or its absence prejudicial. There was a "sprint" transcription of the 911 tape (see page 5 above), so James had the information from the 911 call even though the tape itself was destroyed. E.g., Bonilla v. Portuondo, 00 Civ. 2369, 2004 WL 1782174 at *7 (S.D.N.Y. Aug. 9, 2004) (where habeas petitioner had possessed "sprint" report at trial, the withholding of the 911 tape was not considered suppressed evidence under Brady and even if it were, the evidence was not material); Southerland v. Gourd, 269 F. Supp. 2d 48, 52 (E.D.N.Y. 2003) (Weinstein, D.J.) (habeas petitioner had sprint report which provided him with the pertinent information of the 911 call and therefore was not prejudiced by the destruction of the 911 tape); Hagen v. Ross, No. 99-CV-1261, 2002 WL 1285128 at *3 (E.D.N.Y. June 4, 2002) (no Brady violation where 911 tape inadvertently destroyed pursuant to routine police practices, habeas petitioner had sprint report, and there was no showing tape was material or its absence prejudicial); Greenidge v. Edwards, 99 Civ. 4520, 2000 WL 97272 at *4 (S.D.N.Y. Jan. 28, 2000) (habeas petitioner's defense was not "hampered" by the inadvertent destruction of the 911 tape because petitioner had been provided the "sprint" report which was used "thoroughly to cross-examine the arresting officer"); People v. Seaman, 238 A.D.2d 449, 450, 656 N.Y.S.2d 350, 351-52 (2d Dep't) ("The inadvertent destruction of an audio tape of a '911' telephone call to the police did not warrant

a sanction, because the defendant was not prejudiced thereby" since he was provided the "sprint" report.), <u>appeal denied</u>, 90 N.Y.2d 863, 661 N.Y.S.2d 190 (1997); <u>People</u> v. <u>Figueroa</u>, 156 A.D.2d 322, 323, 549 N.Y.S.2d 381, 381 (1st Dep't 1989) ("Considering that the loss of the [911] tape was inadvertent, the other proof available at trial, and that defendant, in possession of the Sprint report, was not entirely deprived of the evidence which he sought, the draconian relief of reversal is not warranted."), <u>appeal denied</u>, 76 N.Y.2d 734, 558 N.Y.S.2d 896 (1990). There has been no claim that Dixon's tone of voice could have provided any additional information from that in the written report. Similarly, while the vouchered bag of clothing was destroyed, a photograph of the destroyed items was provided to the defense, and James has not explained what the missing clothing would have shown that the photo did not. Finally, as to both the 911 tape and the clothing, as with the store videotape, the court gave a strong adverse inference instruction. (<u>See</u> pages 6-8 above.)

The First Department's denial of James' <u>Brady</u> claim was not erroneous, much less an unreasonable application of <u>Brady</u> and its progeny. James' <u>Brady</u> habeas claim is DENIED.

## III.   THE PROSECUTION'S CLOSING ARGUMENT DID NOT VIOLATE JAMES' RIGHT TO DUE PROCESS AND A FAIR TRIAL

James claims that the prosecution's closing argument denied him due process and his right to a fair trial. (Dkt. No. 2: Pet. ¶ 13, Point II.)

Prosecutorial misconduct violates a defendant's due process rights only when it is of "sufficient significance to result in the denial of the defendant's right to a fair trial." <u>Greer</u> v. <u>Miller</u>, 483 U.S. 756, 765, 107 S. Ct. 3102, 3109 (1987); <u>accord</u>, <u>e.g.</u>, <u>United States</u> v. <u>Muja</u>, No. 02-1175, 102 Fed. Appx. 212, 216, 2004 WL 1406312 at *3 (2d Cir. June 23, 2004) ("'It is a rare case in

which improper comments in a prosecutor's summation are so prejudicial that a new trial is required.'"); United States v. Coriaty, 300 F.3d 244, 255 (2d Cir. 2002) (Even on direct federal appeal, "[b]efore a conviction will be reversed, a prosecutor's comments on summation must 'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.' The defendant must point to 'egregious misconduct.'") (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 647, 94 S. Ct. 1868, 1871, 1873 (1974)); United States v. Elias, 285 F.3d 183, 190 (2d Cir.) ("To warrant reversal, the prosecutorial misconduct must cause the defendant 'substantial prejudice' by '"so infecting the trial with unfairness as to make the resulting conviction a denial of due process."'"), cert. denied, 537 U.S. 90, 123 S. Ct. 430 (2002); United States v. McCarthy, 54 F.3d 51, 55 (2d Cir. 1995), cert. denied, 516 U.S. 880, 116 S. Ct. 214 (1995); Blisset v. LeFevre, 924 F.2d 434, 440 (2d Cir.), cert. denied, 502 U.S. 852, 112 S. Ct. 158 (1991).[22/] Stated another way, "the law is settled that 'federal habeas relief is not available on the basis of improper prosecutorial statements at trial unless the errors, in context of the summation as a whole, were so fundamentally

---

[22/]     See also, e.g., Smalls v. McGinnis, 04 Civ. 0301, 2004 WL 1774578 at *20 (S.D.N.Y. Aug. 10, 2004) (Peck, M.J.); Peakes v. Spitzer, 04 Civ. 1342, 2004 WL 1366056 at *15 (S.D.N.Y June 16, 2004) (Peck, M.J.); Green v. Herbert, 01 Civ. 11881, 2002 WL 1587133 at *17 (S.D.N.Y. July 18, 2002) (Peck, M.J.); Brock v. Artuz, 99 Civ. 1903, 2000 WL 1611010 at *9 (S.D.N.Y. Oct. 27, 2000) (Peck, M.J.); Cruz v. Greiner, 98 Civ. 7939, 1999 WL 1043961 at *30 (S.D.N.Y. Nov. 17, 1999) (Peck, M.J.); Lugo v. Kuhlmann, 68 F. Supp. 2d 347, 367 (S.D.N.Y. 1999) (Patterson, D.J. & Peck, M.J.); Readdon v. Senkowski, 96 Civ. 4722, 1998 WL 720682 at *4 (S.D.N.Y. Oct. 13, 1998); Hurd v. Keane, 97 Civ. 2991, 1997 WL 582825 at *4 (S.D.N.Y. Sept. 19, 1997); Beverly v. Walker, 899 F. Supp. 900, 911 (N.D.N.Y. 1995), aff'd, 118 F.3d 900 (2d Cir.), cert. denied, 522 U.S. 883, 118 S. Ct. 211 (1997); Washington v. Walker, 89 Civ. 7841, 1994 WL 391947 at *3 (S.D.N.Y. July 28, 1994) ("Even where a prosecutor's remarks are improper, 'constitutional error occurs only when the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair.'") (quoting Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990) (quoting Garofolo v. Coombe, 804 F.2d 201, 206 (2d Cir. 1986))).

unfair as to deny petitioner a fair trial.'" Tejada v. Senkowski, 92 Civ. 3012, 1993 WL 213036 at *3 (S.D.N.Y. June 16, 1993), aff'd mem., 23 F.3d 397 (2d Cir.), cert. denied, 513 U.S. 887, 115 S. Ct. 230 (1994).[23/]

To properly evaluate the prosecution's actions, the alleged misdeeds must be placed in context, and "[t]he severity of the misconduct, curative measures, and the certainty of conviction absent the misconduct are all relevant to the inquiry." Blisset v. LeFevre, 924 F.2d at 440; accord, e.g., Greer v. Miller, 483 U.S. at 766, 107 S. Ct. at 3109 ("it is important 'as an initial matter to place th[e] remar[k] in context'"); United States v. McCarthy, 54 F.3d at 55; United States v. Friedman, 909 F.2d 705, 709 (2d Cir. 1990); United States v. Biasucci, 786 F.2d 504, 514 (2d Cir.), cert. denied, 479 U.S. 827, 107 S. Ct. 104 (1986).[24/]

Here, the prosecution's statements did not deny James his right to a fair trial. First, the statements were brief and isolated. More importantly, immediately following the statements, defense counsel objected and the court immediately made a curative remark to the jury. (Dkt. No.

---

[23/]     Accord, e.g., Smalls v. McGinnis, 2004 WL 1774578 at *20; Peakes v. Spitzer, 2004 WL 1366056 at *15; Green v. Herbert, 2002 WL 1587133 at *17; Cromwell v. Keane, 2002 WL 929536 at *25; Brock v. Artuz, 2000 WL 1611010 at *9; Cruz v. Greiner, 1999 WL 1043961 at *30; Lugo v. Kuhlmann, 68 F. Supp. 2d at 367; Franza v. Stinson, 58 F. Supp. 2d 124, 149 (S.D.N.Y. 1999) (Kaplan, D.J. & Peck, M.J.); see also, e.g., Donnelly v. DeChristoforo, 416 U.S. 637, 647, 94 S. Ct. 1868, 1873 (1974); Floyd v. Meachum, 907 F.2d at 355 (quoting Garofolo v. Coombe, 804 F.2d at 205); Edmonds v. McGinnis, 11 F. Supp. 2d 427, 437 (S.D.N.Y. 1998); Gaiter v. Lord, 917 F. Supp. 145, 153 (E.D.N.Y. 1996); Jones v. Kuhlmann, 93 Civ. 5963, 1995 WL 733649 at *4 (S.D.N.Y. Dec. 12, 1995).

[24/]     See also, e.g., Smalls v. McGinnis, 2004 WL 1774578 at *20; Peakes v. Spitzer, 2004 WL 1366056 at *15; Green v. Herbert, 2002 WL 1587133 at *17; Cromwell v. Keane, 2002 WL 929536 at *25; Brock v. Artuz, 2000 WL 1611010 at *9; Cruz v. Greiner, 1999 WL 1043961 at *30; Lugo v. Kuhlmann, 68 F. Supp. 2d at 367; Hurd v. Keane, 1997 WL 582825 at *4; Beverly v. Walker, 899 F. Supp. at 911.

9: Tr. 827.)[25/]   The trial court's jury charge further acted as a cure to any improper statements made by the prosecution in its closing.   (See pages 7-8 above.)[26/]   The Court agrees with the First Department (see page 10 above) that the prosecution's challenged summation comments merely referred to the strong evidence of James' guilt.   Finally, even if the prosecutor's summation comments were improper, they did not deprive James of a fair trial in light of their non-inflammatory and isolated nature, the trial judge's instructions to the jury, and the strong evidence of James' guilt: there were several witnesses who identified him in court as one of the robbers, and the  photograph made from the lost videotape showed James in HMV at the time of the robbery.   (See pages 4-5 above.) James also was identified by two occupants of the getaway car as having come out of HMV,

---

[25/]   The court stated "[the jury has] to consider all the evidence carefully and then make their verdict of guilt or non-guilt."  (Tr. 827.)

[26/]   Specifically, the court stated that "summations of counsel are not evidence" (Tr. 760), and "if you [the jury] find any argument or inference or conclusion urged by either of the attorneys is not based in the evidence or it is unreasonable or illogical or inconsistent with the evidence, you don't have to accept that argument and you can in fact disregard that particular argument." (Tr. 840.)  The jury is presumed to obey a court's curative instruction. See, e.g., Greer v. Miller, 483 U.S. 756, 767 n.8, 107 S. Ct. 3102, 3109 n.8 (1987) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence . . . , unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions."); Richardson v. Marsh, 481 U.S. 200, 211, 107 S. Ct. 1702, 1709 (1987) ("juries are presumed to follow their instructions"); Shotwell Mfg. Co. v. United States, 371 U.S. 341, 367, 83 S. Ct. 488, 463 (1962) (When a limiting instruction is clear, "[i]t must be presumed that the jury conscientiously observed it."); United States v. Linwood, 142 F.3d 418, 426 (7th Cir.) ("Juries may not be familiar with the hearsay rule, but the law assumes that they can and do follow the limiting instructions issued to them."), cert. denied, 119 S. Ct. 224 (1998); Chalmers v. Mitchell, 73 F.3d 1262, 1267 (2d Cir.) (the court "assume[s] that a jury applies the instructions it is given"), cert. denied, 519 U.S. 834, 117 S. Ct. 106 (1996); United States v. Castano, 999 F.2d 615, 618 (2d Cir. 1993); Kanani v. Phillips, 03 Civ. 2534, 2004 WL 2296128 at *19 & n.31 (S.D.N.Y. Oct. 13, 2004) (Peck, M.J.); Smalls v. McGinnis, 04 Civ. 0301, 2004 WL 1774578 at *24 & n.45 (S.D.N.Y. Aug. 10, 2004) (Peck, M.J.) (citing cases); Cruz v. Greiner, 1999 WL 1043961 at *31 n.26.

and he was arrested wearing the same type and color jumpsuit as one of the robbers. Within this context, the prosecution's statements clearly were harmless. See, e.g., United States v. Thomas, 377 F.3d 232, 245 (2d Cir. 2004)("[E]ven if the [prosecutor's] comments were improper, they did not cause [the defendant] substantial prejudice. . . . The alleged misconduct, if any, was not severe in this case, . . .[the district judge] provided an immediate curative instruction [and] . . . it is highly likely [the defendant] would have been convicted even in the absence of the prosecutor's remarks."); United States v. Drescher, No. 01-1705, 77 Fed. Appx. 45, 48, 2003 WL 22299681 at *2 (2d Cir. Oct. 8, 2003) (despite improper remark by prosecution in its rebuttal summation, given the "innocuous interpretation drawn by the district judge, the strength of the evidence against [the defendant], and the district court's instructions to the jury, which insured the jury's proper understanding of the defendant's rights, we find that the incident was harmless beyond a reasonable doubt and had no effect on the jury's deliberations."); United States v. Gambina, Nos. 00-1545, 02-1076, 51 Fed. Appx. 40, 42, 2002 WL 31558029 at *1 (2d Cir. Nov. 19, 2002) ("[T]he prosecutor's remarks did not cause 'substantial prejudice.' While some of the[] comments were inappropriate, none were egregious. Moreover, the challenged remarks were substantially mitigated by defense counsel's objections, the trial court's instructions, and the prosecutor's clarifications. Finally, there was overwhelming evidence of [the defendant's] guilt."); United States v.Elias, 285 F.3d 183, 191-92 (2d Cir.) (improper comments were "an aberration in an otherwise fair proceeding," the curative instruction was adequate and the defendant "most likely would have been convicted even without the improper remarks."), cert. denied, 537 U.S. 90, 123 S. Ct. 430 (2002); Rao v. Artuz, No. 97-2703, 199 F.3d 1323 (table), 1999 WL 980947 at *2-3 (2d Cir. Oct. 22, 1999) ("strength of the

evidence against the petitioner" was enough to "bar[] the conclusion that he suffered actual prejudice as a result of the prosecutor's remarks"); Tankleff v. Senkowski, 135 F.3d 235, 253 (2d Cir. 1998) ("[S]everity of the prosecutor's misconduct . . . was mitigated by the brevity and fleeting nature of the improper comments" and "the evidence was [not] so closely balanced that the prosecutor's comments were likely to have had a substantial effect on the jury"); Herrera v. Lacy, No. 95-2800, 112 F.3d 504 (table), 1996 WL 560760 at *2 (2d Cir. Oct. 3, 1996) ("While some improper statements were made . . . , the misconduct was not so severe that it was not rendered harmless by the court's curative instruction and the substantial evidence of [petitioner's] guilt."); Bentley v. Scully, 41 F.3d 818, 824-25 (2d Cir. 1994) (denying prosecutorial misconduct claim where prosecution presented "compelling evidence" against petitioner and alleged misconduct was both brief and isolated), cert. denied, 516 U.S. 1152, 116 S. Ct. 1024 (1996); United States v. Rivera, 971 F.2d 876, 885 (2d Cir. 1992) (court's instructions to jury obviated any prosecutorial error); Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991) (although prosecutor made improper statements during summation, no prejudice to defendant where trial court instructed jury that the summations were not evidence and case against defendant was strong); Strouse v. Leonardo, 928 F.2d 548, 557 (2d Cir. 1991) (no violation where "cumulative effect of the prosecutor's alleged misconduct was not so severe as to amount to the denial of a fair trial [and] absent the alleged misconduct, . . . overwhelming evidence" existed against petitioner); Bradley v. Meachum, 918 F.2d 338, 343 (2d Cir. 1990) ("clear evidence of guilt demonstrates that [petitioner] was not prejudiced by the prosecutor's" misconduct), cert. denied, 501 U.S. 1221, 111 S. Ct. 2835 (1991); United States v. Parker, 903 F.2d 91, 98-99 (2d Cir.) (even where prosecutor acted improperly, no claim for

misconduct where "transgression was isolated, the trial court took swift and clear steps to correct [improper conduct], and the evidence against the defendant was strong"), cert. denied, 498 U.S. 872, 111 S. Ct. 196 (1990); United States v. Coffey, 823 F.2d 25, 28 (2d Cir. 1987) (no constitutional violation where alleged misconduct was isolated and not intentional, the trial court provided curative instructions and trial evidence demonstrated defendant's guilt); United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981) (per curiam) ("the existence of substantial prejudice turns upon the strength of the government's case:  if proof of guilt is strong, then the prejudicial effect of the [misconduct] tends to be deemed insubstantial. . . "), cert. denied, 456 U.S. 989, 102 S. Ct. 2269 (1982); Smalls v. McGinnis, 2004 WL 1774578 at *21; Peakes v. Spitzer, 2004 WL 1366056 at *19; Green v. Herbert, 2002 WL 1587133 at *18 & n.34; Brock v. Artuz, 2000 WL 1611010 at *10-11 & n.14; Cruz v. Greiner, 1999 WL 1043961 at *31 (no constitutional violation where prosecutor's questioning was brief, court gave curative instruction and there was strong evidence of guilt); Lugo v. Kuhlmann, 1999 WL 946793 at *19-20 (no prejudice "based on the lack of severity of the alleged misconduct and the strong evidence of [petitioner's] guilt"); Romer v. Keane, 94 Civ. 4980, 1995 WL 758727 at *6 (S.D.N.Y. Dec. 22, 1995) (finding that any alleged prosecutorial misconduct "was cured by the overwhelming evidence of petitioner's guilt"); Magnotta v. Berry, 906 F. Supp. 907, 926 (S.D.N.Y. 1995) (no constitutional violation based on alleged prosecutorial misconduct where "petitioner almost certainly would have been convicted absent the improper conduct"); Barnett v United States, 870 F. Supp. 1197, 1206 (S.D.N.Y. 1994) (no constitutional violation where "alleged misconduct was not severe," the court "immediately issued a corrective instruction" and "prosecutor's case was extremely strong").

The First Department's denial of James' prosecutorial misconduct claim was not erroneous, much less an unreasonable application of federal law.

## IV. JAMES' INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL CLAIM <u>IS DENIED</u>

### A. <u>The Strickland v. Washington Standard On Ineffective Assistance of Counsel</u>[27]

#### 1. The Strickland Standard

In <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court announced a two-part test to determine if counsel's assistance was ineffective: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel

---

[27] For additional decisions authored by this Judge discussing the <u>Strickland</u> v. <u>Washington</u> standard for ineffective assistance of counsel in language substantially similar to this section of this Report & Recommendation, <u>see</u> <u>Curry</u> v. <u>Burge</u>, 03 Civ. 0901, 2004 WL 2601681 at *26-27 (S.D.N.Y. Nov. 17, 2004) (Peck, M.J.); <u>Otero</u> v. <u>Eisenschmidt</u>, 01 Civ. 2562, 2004 WL 2504382 at *28 (S.D.N.Y. Nov. 8, 2004)(Peck, M.J.); <u>Kanani</u> v. <u>Phillips</u>, 03 Civ. 2534, 2004 WL 2296128 at *25-27 (S.D.N.Y. Oct. 13, 2004) (Peck, M.J.); <u>Medina</u> v. <u>McGinnis</u>, 04 Civ. 2515, 2004 WL 2088578 at *20-21 (S.D.N.Y. Sept. 20, 2004) (Peck, M.J.); <u>Smalls</u> v. <u>McGinnis</u>, 04 Civ. 0301, 2004 WL 1774578 at *13-15 (S.D.N.Y. Aug. 10, 2004) (Peck, M.J.); <u>Gillespie</u> v. <u>Miller</u>, 04 Civ. 0295, 2004 WL 1689735 at *14-16 (S.D.N.Y. July 29, 2004) (Peck, M.J.); <u>Rodriguez</u> v. <u>Senkowski</u>, 03 Civ. 3314, 2004 WL 503451 at *39 (S.D.N.Y. Mar. 15, 2004) (Peck, M.J.); <u>Gomez</u> v. <u>Duncan</u>, 02 Civ. 0846, 2004 WL 119360 at *27 (S.D.N.Y. Jan. 27, 2004) (Peck, M.J.); <u>Montalvo</u> v. <u>Annetts</u>, 02 Civ. 1056, 2003 WL 22962504 at *22-24 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my prior cases); <u>Besser</u> v. <u>Walsh</u>, 02 Civ. 6775, 2003 WL 22093477 at *32-34 (S.D.N.Y. Sept. 10, 2003) (Peck, M.J.), <u>report & rec. adopted</u>, 2003 WL 22681429 (S.D.N.Y. Nov. 13, 2003) & 2003 WL 22846044 (S.D.N.Y. Dec. 2, 2003) (Kaplan, D.J.); <u>Quinones</u> v. <u>Miller</u>, 01 Civ. 10752, 2003 WL 21276429 at *18-19 (S.D.N.Y. June 3, 2003) (Peck, M.J.) (citing my prior decisions), <u>report & rec. adopted</u>, 2005 WL 730171 (S.D.N.Y. Mar. 31, 2005) (Pauley, D.J.); <u>Larrea</u> v. <u>Bennett</u>, 01 Civ. 5813, 2002 WL 1173564 at *16-19 (S.D.N.Y. May 31, 2002) (Peck, M.J.), <u>report & rec. adopted</u>, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002) (Scheindlin, D.J.); <u>Fluellen</u> v. <u>Walker</u>, 97 Civ. 3189, 2000 WL 684275 at *11 (S.D.N.Y. May 25, 2000) (Peck, M.J.), <u>aff'd</u>, No. 01-2474, 41 Fed. Appx. 497, 2002 WL 1448474 (2d Cir. June 28, 2002), <u>cert. denied</u>, 123 S. Ct. 1787 (2003).

made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S. Ct. at 2064; accord, e.g., Wiggins v. Smith, 123 S. Ct. 2527, 2535 (2003). This performance is to be judged by an objective standard of reasonableness. Strickland v. Washington, 466 U.S. at 688, 104 S. Ct. at 2064.[28/]

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time . . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Strickland v. Washington, 466 U.S. at 689, 104 S. Ct. at 2065 (citation omitted).[29/]

Second, the defendant must show prejudice from counsel's performance. Strickland v. Washington, 466 U.S. at 687, 104 S. Ct. at 2064. The "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." Id. at 695, 104 S. Ct. at 2068-69. Put another way, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068.[30/]

---

[28/] Accord, e.g., Wiggins v. Smith, 123 S. Ct. at 2535; Bell v. Cone, 535 U.S. 685, 695, 122 S. Ct. 1843, 1850 (2002).

[29/] Accord, e.g., Bell v. Cone, 535 U.S. at 698, 122 S. Ct. at 1852; Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).

[30/] See also, e.g., Wiggins v. Smith, 123 S. Ct. at 2542; Bell v. Cone, 535 U.S. at 695, 122 S. Ct. at 1850; Aparicio v. Artuz, 269 F.3d at 95; Sellan v. Kuhlman, 261 F.3d at 315; DeLuca v. Lord, 77 F.3d 578, 584 (2d Cir.), cert. denied, 519 U.S. 824, 117 S. Ct. 83 (1996).

(continued...)

The Supreme Court has counseled that these principles "do not establish mechanical rules." Strickland v. Washington, 466 U.S. at 696, 104 S. Ct. at 2069. The focus of the inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process. Id.

Any counsel errors must be considered in the "aggregate" rather than in isolation, as the Supreme Court has directed courts "to look at the 'totality of the evidence before the judge or jury.'" Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001) (quoting Strickland v. Washington, 466 U.S. at 695-96, 104 S. Ct. at 2069); accord, e.g., Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991).

---

30/    (...continued)

"[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. at 2068; accord, e.g., Wiggins v. Smith, 123 S. Ct. at 2542. The phrase "reasonable probability," despite its language, should not be confused with "probable" or "more likely than not." Strickler v. Greene, 527 U.S. 263, 289-91, 119 S. Ct. 1936, 1952-53 (1999); Kyles v. Whitley, 514 U.S. 419, 434, 115 S. Ct. 1555, 1565-66 (1995); Nix v. Whiteside, 475 U.S. 157, 175, 106 S. Ct. 988, 998 (1986) ("a defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice under Strickland"); Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. at 2068 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome."). Rather, the phrase "reasonable probability" seems to describe a fairly low standard of probability, albeit somewhat more likely than a "reasonable possibility." Strickler v. Greene, 527 U.S. at 291, 119 S. Ct. at 1953; cf. id. at 297-301, 119 S. Ct. at 1955-58 (Souter, J., concurring & dissenting) (arguing that any difference between "reasonable probability" and "reasonable possibility" is "slight").

The Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland v. Washington, 466 U.S. at 697, 104 S. Ct. at 2069.[31/]

In addition, the Supreme Court has counseled that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. . . . In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland v. Washington, 466 U.S. at 690-91, 104 S. Ct. at 2066.[32/]

As the Second Circuit noted: "The Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." Lindstadt v. Keane, 239 F.3d at 199.

---

[31/] Accord, e.g., Smith v. Robbins, 528 U.S. 259, 286 n.14, 120 S. Ct. 746, 764 n.14 (2000).

[32/] See also, e.g., Yarborough v. Gentry, 540 U.S. 1, 124 S. Ct. 1, 5-6 (2003); Engle v. Isaac, 456 U.S. 107, 134, 102 S. Ct. 1558, 1575 (1982) ("We have long recognized . . . that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim."); Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998) ("In reviewing Strickland claims, courts are instructed to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and that counsel's conduct was not the result of error but derived instead from trial strategy. We are also instructed, when reviewing decisions by counsel, not to 'second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every "colorable" claim' on appeal.") (citations omitted); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.) (a reviewing court "may not use hindsight to second-guess [counsel's] strategy choices"), cert. denied, 513 U.S. 820, 115 S. Ct. 81 (1994).

### 2.    **Strickland and Appellate Counsel**

The Strickland test applies to appellate as well as trial counsel.  See, e.g., Smith v.

Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 764 (2000).[33/]  A petitioner alleging ineffective

assistance of appellate counsel must prove both that (1) appellate counsel acted objectively

unreasonably in failing to raise a particular issue on appeal, and (2) absent counsel's deficient

performance, there was a reasonable probability that defendant's appeal would have been successful

before the state's highest court.  E.g., Smith v. Robbins, 528 U.S. at 285, 120 S. Ct. at 764; Aparicio

v. Artuz, 269 F.3d at 95; Mayo v. Henderson, 13 F.3d at 533-34; see also Larrea v. Bennett, 01 Civ.

5813, 2002 WL 1173564 at *18 n.30 (S.D.N.Y. May 31, 2002) (Peck, M.J.) (discussing the issue

of whether a federal or state standard should apply), report & rec. adopted, 2002 WL 1808211

(S.D.N.Y. Aug. 6, 2002) (Scheindlin, D.J.), aff'd, No. 02-2540, 368 F.3d 179 (table), 2004 WL

1094269 (2d Cir. May 18, 2004).

Appellate counsel "need not (and should not) raise every nonfrivolous claim, but

rather may select from among them in order to maximize the likelihood of success on appeal."

Smith v. Robbins, 528 U.S. at 288, 120 S. Ct. at 765 (citing Jones v. Barnes, 463 U.S. 745, 750-54,

---

[33/]    Accord, e.g., Evitts v. Lucey, 469 U.S. 387, 396-97, 105 S. Ct. 830, 836-37 (1985); Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 197 (2d Cir. 2002), cert. denied, 537 U.S. 1146, 123 S. Ct. 946 (2003); Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 319 (2d Cir. 2001); McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.), cert. denied, 513 U.S. 520, 115 S. Ct. 81 (1994); Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992), cert. denied, 508 U.S. 912, 113 S. Ct. 2347 (1993); Abdurrahman v. Henderson, 897 F.2d 71, 74 (2d Cir. 1990).

103 S. Ct. 3308, 3312-14 (1983)).[34/]   Reviewing courts should not second guess the reasonable

professional judgments of appellate counsel as to the most promising appeal issues.  Lugo v.

Kuhlmann, 68 F. Supp. 2d 347, 371-72 (S.D.N.Y. 1999) (Patterson, D.J. & Peck, M.J.).[35/]   Thus, a

petitioner may establish constitutionally inadequate performance only by showing that appellate

counsel "omitted significant and obvious issues while pursuing issues that were clearly and

significantly weaker."  Mayo v. Henderson, 13 F.3d at 533; see also, e.g., Jackson v. Leonardo, 162

F.3d at 85.

### 3.      Strickland and the AEDPA Review Standard

For purposes of this Court's AEDPA analysis, "the Strickland standard . . . is the

relevant 'clearly established Federal law, as determined by the Supreme Court of the United States.'"

Aparicio v. Artuz, 269 F.3d at 95 & n.8 (quoting 28 U.S.C. § 2254(d)(1)).[36/]   "For AEDPA purposes,

a petitioner is not required to further demonstrate that his particular theory of ineffective assistance

of counsel is also 'clearly established.'"  Aparicio v. Artuz, 269 F.3d at 95 n.8.  "For [petitioner] to

succeed, however, he must do more than show that he would have satisfied Strickland's test if his

claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to

---

[34/]      Accord, e.g., Sellan v. Kuhlman, 261 F.3d at 317 ("This process of 'winnowing out weaker
arguments on appeal and focusing on' those more likely to prevail, far from being evidence
of incompetence, is the hallmark of effective appellate advocacy."); Jackson v. Leonardo,
162 F.3d 81, 85 (2d Cir. 1998); Mayo v. Henderson, 13 F.3d at 533.

[35/]      Accord, e.g., Jones v. Barnes, 463 U.S. at 754, 103 S. Ct. at 3314; Tsirizotakis v. LeFevre,
736 F.2d 57, 65 (2d Cir.), cert. denied, 469 U.S. 869, 105 S. Ct. 216 (1984).

[36/]      See also, e.g., Wiggins v. Smith, 123 S. Ct. 2527, 2535 (2003); Bell v. Cone, 535 U.S. 685,
698, 122 S. Ct. 1843, 1852 (2002); Sellan v. Kuhlman, 261 F.3d at 315.

convince a federal habeas court that, in its independent judgment, the state-court decision applied

Strickland incorrectly. . . . Rather, he must show that the [First Department] applied Strickland to

the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. at 698-99, 122

S. Ct. at 1852; see also Yarborough v. Gentry, 540 U.S. 1, 124 S. Ct. 1, 4 (2003).

**B.     James' Ineffective Assistance of Appellate Counsel Claim Fails Because His Sentence Was Only Enhanced By His Prior Convictions, As Permitted Under Apprendi**

James argues that his appellate counsel was ineffective for failing to object to the

alleged unconstitutionality of his enhanced sentence under New York's mandatory violent felony

offender statute, Penal Law § 70.08.  (Dkt. No. 11: Am. Pet. Ex.: James Coram Nobis Br. at 2: "New

York's Mandatory Violent Persistent Statute is UnConstitutional"; see also id. at 4.)

New York's sentencing structure provides for enhanced sentences for second felony

offenders, and for persistent felony offenders (i.e., someone who has two or more prior felony

convictions).

A second felony offender is, as the name implies, someone who has a prior felony

conviction.  Penal Law §§ 70.04, 70.06.[37/]  In such a case, the sentencing court must impose an

enhanced sentence, based solely on the fact of the prior felony conviction.

New York's two persistent felony offender sentence-enhancing statutes recently were

aptly summarized by Judge Gleeson, as follows:

> New York has two sentence-enhancing statutes for persistent felony offenders.  One is the persistent violent felony offender provision in N.Y. Penal Law § 70.08, which

---

[37/]     Penal Law § 70.04 applies to second violent felony offenders while § 70.06 applies to second felony offenders other than second violent felony offenders.

practitioners of criminal law in New York often refer to as the "mandatory" one. That statute applies to defendants who stand convicted of a violent felony (as defined in N.Y. Penal Law § 70.02) and have previously been convicted of two or more predicate violent felonies (as defined in N.Y. Penal Law § 70.04(1)(b)). Such defendants receive an indeterminate sentence of imprisonment, the maximum of which must be life. Minimum terms are prescribed by the statute as well and vary depending on the grade of the offense of conviction. See N.Y. Penal Law § 70.08(3). . . . Under § 70.08, "the court must impose" an enhanced penalty once it finds that the predicate convictions occurred, id. at § 70.08(2) (emphasis added), hence the use of the shorthand "mandatory" to describe that form of sentence enhancement.

The second persistent felony offender statute is N.Y. Penal Law § 70.10. This statute is designed to provide enhanced punishment for recidivists who fail to qualify as mandatory persistent violent felony offenders under § 70.08. It characterizes as a "persistent felony offender" any defendant who stands convicted of a felony and has two prior felony convictions (whether or not they are for violent felonies) as defined in the statute. See N.Y. Penal Law § 70.10(1)(a)-(c). As an enhanced penalty for such offenders, § 70.10 provides that, in lieu of the sentence otherwise authorized by the penal law, persistent felony offenders "may" be sentenced as though the offense of conviction were a class A-1 felony. Id. (emphasis added). For defendants like the petitioner here, the enhancement is severe. . . .

Unlike the enhanced sentences prescribed by the persistent violent offender provision, which again are mandatory, the enhancement under § 70.10 does not necessarily follow once a defendant is found to have the requisite prior convictions. Rather, another step is required. After the defendant is determined to be an eligible recidivist, the sentencing court must conduct a hearing to determine whether "it is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest." Id. at § 70.10(2); see also N.Y. Crim. Proc. Law ("CPL") § 400.20. Only if the court reaches that "opinion" and supports it with sufficient factual findings may the enhanced (i.e., A-1 felony) punishment be imposed. This form of sentence enhancement is therefore referred to as the "discretionary" persistent felony offender punishment.

Brown v. Greiner, 258 F. Supp. 2d 68, 71-72 (E.D.N.Y. 2003) (Gleeson, D.J.); see People v. Cephas, No. 5473/01, 2003 WL 21783355 at *1-2 (Sup. Ct. N.Y. Co. May 23, 2003); see also Besser v. Walsh, 02 Civ. 6775, 2003 WL 22801952 at *3-5, 27, 30-36 (S.D.N.Y. Nov. 26, 2003) (Peck, M.J.)

(finding New York's discretionary persistent felony statute, Penal Law § 70.10, to violate Apprendi and its progeny).

James' ineffective appellate counsel claim is dependent upon whether New York's mandatory violent felony offender sentencing statute, Penal Law § 70.08, is constitutional in light of the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000). The Supreme Court articulated in Apprendi the rule that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S. Ct. at 2362-2363.[38] Penal Law § 70.08, under which James was found to be a persistent violent felony offender and sentenced, falls within this exception, i.e., the enhanced sentence is based only on his prior felony convictions. Thus, there was no Apprendi violation. Appellate counsel cannot be ineffective for failing to raise a meritless claim on appeal. See, e.g., Steele v. United States, 04 Civ. 6918, 02 Cr. 629, 2005 WL 704868 at *15( S.D.N.Y. Mar. 29, 2005); Gomez v. Duncan, 02 Civ. 0846, 2004 WL 119360 at *34 (S.D.N.Y. Jan. 27, 2004) (Peck, M.J.) ("It is well-settled that appellate counsel cannot be faulted for failing to raise a meritless claim."); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *30 (S.D.N.Y. Dec.17, 2003) (Peck, M.J.) ("Appellate counsel

---

[38] See also United States v. Booker, 125 S. Ct. 738, 756 (2005) ("[W]e reaffirm our holding in Apprendi: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.") (emphasis added); Blakely v. Washington, 124 S. Ct. 2531, 2536 (2004); Ring v. Arizona, 536 U.S. 584, 597 n.4, 122 S. Ct. 2428, 2437 n.4 (2002); Jones v. United States, 526 U.S. 227, 248-49, 119 S. Ct. 1215, 1226-27 (1999); Almendarez-Torres v. United States, 523 U.S. 224, 226-27, 118 S. Ct. 1219, 1222 (1998) (holding that sentence enhancement based on prior convictions does not violate the Constitution).

cannot be faulted for not raising meritless arguments as to trial counsel's effectiveness."); Maldonado

v. Greiner, 2003 WL 22435713 at *41 (& cases cited therein). James' ineffective assistance of

appellate counsel claim is DENIED.

## CONCLUSION

For the reasons discussed above, James' habeas petition is <u>DENIED</u>. A certificate of

appealability does not issue.

SO ORDERED.

Dated:      New York, New York
            April 15, 2005

**Andrew J. Peck**
United States Chief Magistrate Judge

Copies to:    Joseph James
           Kimberly Morgan, Esq.